Ruffin, C. J.
 

 Although it does not expressly appear, it must be understood from the manner in which the case is stated, that the gift of Cato from his grand mother to the plaintiff was by parol, and that the delivery was to the father for the plaintiff, then an infant probably. Such being the case, it may, at the least, be a question, whether the plaintiff could make a title under the Statute of lim itations, supposing him to have claimed under the conveyance from his father, unless something more appeared in the case than now does. For, although the Statute began to run in May 1840, in bar of an action against John D. Graham for his refusal to give the negro up to Byers, and although it be farther admitted, that, if he had
 
 *248
 
 retained the possession for three years after his refusal» Byers might also have been barred of his right to take or recover the negro, yet the result maybe different, where be did not retain the slave for that period, but within it delivered him to the donee of Byers, who accepted him, and for any thing now to be seen did not hold him otherwise than as Byers had done, as far as he made known to Byers. In such a case, it is worthy of consideration, whether Byers has not a right to treat a delivery to his donee, as a delivery to himself, as the donee is his bailee
 
 ’>
 
 unless the latter distinctly apprise the donor, that he denies his title and holds for himself, as by a refusal to restore tl.e possession or a wrongful disposition oftheproperty.
 
 Green
 
 v.
 
 Harris,
 
 3 Ire. 311. It is true Byers might have sued John D. Graham atany time withinthreeyearsafter thedemand. But where the negro was delivered to the son. he had no motive to sue the father, unless the son should deny his right .as the father had done, and if he had done so, then, no doubt, the statute- would run against him in favor of the plaintiff, because then he would have an action against the son, as well as the father. In demanding the negro, then, it may have been the very purpose of B}rers, finding that John D. Graham claimed the negro as his own property, to get him for the plaintiff, and when the father afterwards delivered him. to his son, Byers might have considered his purpose answered, and for that reason rested satisfied. For, it is not stated, he even knew, that the father had undertaken to convey the negro to the plaintiff, as of his own gift, and much less that the.plaintiff made known to him, that he claimed the negro as his own, under a deed of gift from his father, and not under the parol gift of his grandmother. Could Byers have brought trover against the present plaintiff, merely upon his taking possession of the negro, and without a demand and refusal, when in the very stating of his title it would appear, that he had given the negro to him verbally?
 
 *249
 
 Would it have been sufficient for him to shew, in support of that action, that the pjaintiff’s father had refused to deliver the negro on demand, without shewing further that the plaintiff likewise denied his title and set him at defiance ? If it would not, then Byers never had a cause of action against the plaintiff, and, therefore, it would seem, ought not to be barred by the Statute, but might claim the slave, since the title had not vested in John D. Graham, at the time he parted from tiie possession to his son. But however that may be, as it is not necessary to the present case, we do not propose to decide the point. It is perfectly clear, that, if the plaintiff, although he took a deed of gift from his father, including this with other negroes, did not in fact assert a title under that deed, but took the negro under the gift from his grandmother, then
 
 his
 
 possession would not be adverse to Byers; and therefore there would not be three years’ possession of that character, and Byers would not be barred. It was upon that hypothesis the instructions asked by the defendant proceeded, and we think they ought to have been given» For although the subsequent declarations of the plaintiff would not
 
 proprin vigore
 
 vest a good title in him, as in the nature of a coveyance, yet, those declarations were material to show, that the plaintiff’ rested upon his having had an adverse possession; which was assumed, be cause he came in under his father, who had made his possession adverse by an assertion of title. That consequence would ordinarily follow ; and it might follow in this case, also, upon the presumption, that the plaintiff' claimed as his father did, unless it should be rebutted by the nature of the plaintiff’s title as donee of Byers, or unless it should appear upon evidence, that, in truth and fact, the plaintiff did not set up the adverse title, but, being conscious of its defect, abandoned it and held under his grandmother. Now his acknowledgment, at any time, of the manner in which he had held, or then held,
 
 *250
 
 was evidence to the jary, upon which they might find that his possession was not adverse to his grandmother, but was under her. It was therefore,at all events, erroneous to assume in' the instructions to the jury, that the possession of the plaintiff was adverse, in opposition to his ad mission of the grandmother’s title, implied by the declarations proved on the part of the defendant, if credited. It ought, at least, to have been left to the jury on that-evidence, whether the plaintiff took the negro and held him under the gift from his grandmother, with instructions, that, if he did, his possession had not been adverse to her or her husband, and therefore that he had no title against the latter. Upon this last ground the Court holds the judgment to be erroneous, and that it must be reversed, and a
 
 venire de novo
 
 awarded.
 

 Per Curiam.
 

 Judgment accordingly.